Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAMIYA AMERICA CORPORATION, d/b/a MAC GROUP, <br><br> Defendant. | No.: 2:19-cv-01340 BJR <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER |

## I. INTRODUCTION

This matter comes before the Court on a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction or to Transfer, filed by Defendant Mamiya America Corporation ("MAC Group"). MAC Group, a New York corporation, seeks dismissal of this case in its entirety, or transfer of the case to the Southern District of New York. Plaintiff National Products Inc. ("NPI") opposes the motion. Having reviewed the parties' briefs and the material and caselaw cited therein, the Court finds and rules as follows.

## II. BACKGROUND

Plaintiff NPI is a corporation organized and existing under the laws of the State of Washington, having its principal place of business in Seattle. *See* Compl. ¶ 1, Dkt. No. 1. NPI manufactures and sells, among other things, a "double-socket mount arm that is tapered in the

1

middle like an hourglass." *Id*. ¶ 9, citing U.S. Trademark Reg. No. 4,254,086. NPI filed an application to register the shape with the United States Patent & Trademark Office, and registration for a trademark of the hourglass-shaped design issued on December 4, 2012. *Id*.

Defendant MAC Group is a New York corporation, with its principal place of business, and only offices, in the State of New York. *See* Decl. of Jan Lederman ¶¶ 3-4, Dkt. No. 16. It has no offices, employees, or assets in Washington. *Id*. ¶ 5. NPI alleges that MAC Group does business under the brand name Kupo, or serves as the exclusive distributor for Kupo-branded products. Compl. ¶ 2. NPI claims that certain Kupo products contain double-socket mount arms that are confusingly similar to and in violation of NPI's hourglass-design trade dress. *Id*. ¶ 11. The Complaint includes three causes of action: (1) trade dress infringement in violation of 15 U.S.C. § 1114; (2) unfair competition and false designation of original, in violation of 15 U.S.C. § 1125(a); and (3) unfair business practices, in violation of RCW 19.86 *et seq. Id*. ¶¶ 14-35.

Relevant to this motion, NPI claims that "[t]his Court has personal jurisdiction over MAC Group because MAC Group has engaged in business activities in and directed to this judicial district and the State of Washington and has committed the tortious acts complained of in this judicial district and the State of Washington." *Id*. ¶ 5. Taking NPI's allegations as true, it appears that MAC Group has the following suit-related contacts with the State of Washington: (1) MAC Group has allegedly infringed the trade dress rights of a Washington resident, NPI; and (2) MAC Group has sold allegedly infringing products to customers in Washington. Compl. ¶ 5. MAC Group responds—and NPI does not dispute—that the only sale of any accused products occurred in 2018, when MAC Group sold two allegedly infringing products to a customer residing in Washington, for a total sale of $67. Lederman Decl. ¶ 9. NPI also alleges that MAC Group offers Kupo products for sale through certain Washington-based entities, such as Seattle-based Glazer's Camera and Amazon.com. Compl. ¶ 5. Nevertheless,

NPI does not dispute that the only sale of an *accused* Kupo product to a Washington resident is the single $67 sale.

### III. DISCUSSION

#### A. Applicable Law of Personal Jurisdiction

On a motion to dismiss, the plaintiff has the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). In determining whether a plaintiff has met this burden, any uncontroverted allegations in the complaint must be taken as true, and any disputes of fact "must be resolved in [plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)(internal citations omitted). In this case, there are no disputes of material fact relevant to the instant motion, and neither party has requested jurisdictional discovery.

In the absence of applicable federal law, jurisdiction is governed by the long-arm statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends personal jurisdiction to the broadest reach of federal due process. *See* RCW § 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 2d 1989). To comply with the requirements of due process, a plaintiff must demonstrate "(1) that the non-resident defendant has established 'minimum contacts' with the forum state; and (2) that the exercise of personal jurisdiction comports with the traditional notions of 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 415–416 (1984). General jurisdiction requires that a defendant's contacts in the forum state are "continuous and systematic." *See id*. Because NPI does not argue that MAC Group is subject to this Court's general jurisdiction, the Court considers only the question of specific jurisdiction.

For tort and tort-like claims such as those at issue in this case, the Court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has purposefully directed his activities toward the forum; (2) the plaintiff's claims arise out of those forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See Burger King Corp.,* 471 U.S. at 472–76; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). MAC Group does not challenge the second or third prongs of this three-part test. Therefore, the only question at issue is whether MAC Group "purposefully directed" its activities towards Washington.

**B.      Whether MAC Group's Actions Were "Purposefully Directed" at Washington**

The U.S. Supreme Court set forth the "purposeful direction" test for assessing specific jurisdiction in *Calder v. Jones*, 465 U.S. 783 (1984). Under the so-called *Calder* "effects test," the defendant must have allegedly, "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) (internal quotation marks omitted). MAC Group does not dispute that it committed an intentional act, but argues that NPI cannot show either that MAC Group "expressly aimed" its actions at Washington, or that MAC Group was aware that any harms it caused would be suffered in this state. The Court addresses each of these two elements in turn.

   *1.   Whether Acts Were Expressly Aimed at Washington*

The Ninth Circuit has described "express aiming" for purposes of specific jurisdiction in the intentional tort context as occurring where a defendant "knew the impact of his willful violation would be felt" in the forum state. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675-76 (9th Cir. 2012), citing *Calder*, 465 U.S. at 789–90 ("the intentional acts in *Calder*—the writing and editing of an allegedly libelous article—were 'expressly aimed' at California because the petitioners 'knew [the article] would have a potentially devastating

4

impact upon respondent' who they knew lived and worked in California.").[1] Courts have also found defendants to have "expressly aimed" their actions at a forum where a defendant targeted markets or solicited business in the forum. *See, e.g., Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (accused website an attempt to solicit business to compete in forum).

NPI argues that MAC Group's actions were expressly aimed at Washington because MAC Group allegedly infringed trade dress rights owned by a Washington resident, NPI. It also points to the sale of the accused MAC Group products to a Washington resident. The Court finds that these allegations are not sufficient, alone or together, to establish the minimum contacts required by law.

First, "mere injury to a forum resident is not a sufficient connection to the forum.... The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore,* 571 U.S. 277, 290 (2014). NPI's residency, therefore, is not the proper focus of an express aiming inquiry. Further, NPI has not made any allegations supporting a conclusion that the single $67 sale of accused products was anything other than incidentally made in Washington. Instead, this sale appears to be the paradigmatic "random, fortuitous, or attenuated" transaction that

---

[1] As NPI points out, the *Washington Shoe* holding has been criticized and, arguably, overruled. *See Walden v. Fiore*, 571 U.S. 277 (2014); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017)(*Walden* "made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum."); *Williams Bus. Services, Inc. v. Waterside Chiropractic, Inc*., No. C14-5873 BHS, 2016 WL 2610249, at *4 (W.D. Wash. May 6, 2016) (noting that "[s]ubsequently, the Supreme Court issued its opinion in *Walden*, which some district courts in this circuit have concluded either implicitly overruled *Washington Shoe* or, at the least, put *Washington Shoe*'s continuing validity in question" and reviewing district court cases in the Ninth Circuit calling into question the *Washington Shoe* analysis). Contrary to NPI's contention, however, the upshot of the criticism is only that a defendant's knowledge of plaintiff's residency in the forum may not be *sufficient* to establish personal jurisdiction. *Axiom Foods*, 874 F.3d at 1070 (*Walden* "made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum."). Because it is undisputed that MAC Group did not have knowledge of NPI's state of residency, *Walden*'s impact on *Washington Shoe* is not relevant to this case.

courts have repeatedly rejected as insufficient to establish the kind of minimum contacts necessary to satisfy personal jurisdiction's due process requirements. *See Burger King Corp.,* 471 U.S. at 475*; see also, e.g., Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)("While a single act can support jurisdiction, the act must first create a substantial connection with the forum. . . . Put differently, some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum.") (citations omitted); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233–34 (N.D. Cal. 2014) (delivery or consumption of products in the forum state that are "random," "fortuitous," or "attenuated" do not satisfy the express aiming analysis).

The cases that NPI cites for its argument that a single transaction is sufficient to establish jurisdiction only highlight the weakness of its position. *See, e.g., Authentify Patent Co., LLC v. StrikeForce Techs., Inc.*, 39 F. Supp. 3d 1135, 1144 (W.D. Wash. 2014)(stating that "singular acts" are sufficient to establish jurisdiction, but finding defendant "purposefully directed its commercial efforts" at Washington when it "sent promotional material, offered to set up trial periods, conducted an online demonstration of the product, and sent [accused product] pricing information to Washington-based entities or individuals"); *Masters Software, Inc. v. Discovery Commc'ns, Inc.*, No. C10-405RAJ, 2010 WL 11692802, at *3 (W.D. Wash. Sept. 3, 2010) (noting that "a single contact or set of contacts can be sufficient to confer jurisdiction," but finding jurisdiction where defendant "produced and promoted" a tour scheduled to appear in Seattle, contracted with Seattle theater, and "intentionally targeted Washington residents for the sale of tickets to his Tour appearance in Seattle"). None of these cases involves a single, isolated sale (let alone one totaling less than $100), and in each there was evidence of intentional and extensive targeting of residents of the forum.

In contrast, MAC Group does not advertise, promote sales, or otherwise conduct any business activity in this state, and is not evidently attempting to target or "exploit" the

6

Washington marketplace. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (noting that in selling thousands of magazines to New Hampshire customers, defendant "has continuously and deliberately exploited the New Hampshire market" thereby subjecting itself to specific jurisdiction in that state). Nor is there evidence of any ongoing sales of the infringing products. Indeed, the single allegedly infringing MAC Group product that NPI has claimed is being sold on the Glazer's Camera website appears listed as "out of stock." *See* Ex. C to Decl. of Johnathan McMichael, Dkt. No. 27. One $67 sale made over a year ago—without advertisements, promotions, targeted marketing, or evidence of commercial ambitions expressly aimed at Washington or its residents—is simply too incidental, isolated, and *de minimus* to justify haling MAC Group into court thousands of miles away from its home.

Finally, NPI has not alleged facts sufficient to demonstrate that MAC Group's relationships with Washington entities such as Amazon have given rise *to the claims in this case*, as due process requires in a specific jurisdiction inquiry. *See Burger King Corp.,* 471 U.S. at 472–76. It does not appear that NPI is accusing any of the MAC Group products distributed through these entities (other than the *de minimus* $67 sale, discussed above). As courts in this district have already determined, distribution through Amazon does not constitute "express aiming" at Washington—even where (unlike here) the sales *are* of accused products. *See Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, No. 2:18-CV-01530-RAJ, 2019 WL 4058971, at *3 (W.D. Wash. Aug. 28, 2019) ("Defendant's sale of 59 [accused] costumes via its Amazon account is hardly a continuous and deliberate exploitation of the Washington market, sufficient to satisfy the "express aiming" requirement. . . . To hold otherwise would be to allow any defendant who sells products on Amazon to be haled into court in Washington, regardless of their contacts with the state.").[2]

---

[2] NPI's criticism of *Rubie's Costume Co.* is not well-taken. It may not be controlling, but based as it is on a materially similar set of facts, it is highly persuasive. Its holding is also consistent with the rest of the case law cited herein.

## 2. *Whether MAC Group Knew Harms Would Be Suffered in Washington*

MAC Group is also not subject to specific jurisdiction of this Court because NPI has failed to allege facts supporting the third element of the *Calder* test; MAC Group was not aware its actions would harm a resident of Washington because, as noted above, MAC Group was not aware that NPI is a Washington resident. Lederman Decl. ¶ 11. This uncontroverted fact alone is dispositive. NPI's argument that the law does not impose a requirement that a non-resident defendant be aware of the plaintiff's residency is unsupported and inaccurate. Resp. at 9-10. The *Calder* test explicitly requires a plaintiff to allege facts demonstrating that a defendant knew its harms would be suffered in the forum. *See Brayton Purcell*, 606 F.3d at 1128, citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc).

Contrary to NPI's position, mere foreseeability of harm does not satisfy this element of the *Calder* test. In fact, the cases that NPI cites clearly demonstrate that foreseeability alone is insufficient. In *Lindora v. Isagenix, International, LLC*, for example, which NPI cites for the proposition that "[t]he touchstone of this requirement is . . . its foreseeability," the defendant Isagenix, which was not a resident of the forum state California, nevertheless "has more Associates in California than in any other state, and sells more products to purchasers in California than in any other state[,] holds a variety of training workshops, promotional events, and annual conferences in San Diego, California, and in California more generally, at which the company trains Associates, recruits new Associates, and promotes new products." 198 F. Supp. 3d 1127, 1133 (S.D. Cal. 2016) (citations omitted)("The Ninth Circuit has emphasized that express aiming requires 'something more' than 'a foreign act with foreseeable effects in the forum state.'"), citing *Washington Shoe,* 704 F.3d at 675 and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000). The instant case is simply not comparable. *See also Brayton Purcell*, 606 F.3d at 1131 ("It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] *was known to reside*.") (emphasis

added). NPI has not alleged facts supporting a conclusion that MAC Group committed harms it knew would be suffered in this state, failing the third prong of the *Calder* test as well.[3]

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant MAC Group's motion and dismisses this matter without prejudice.

DATED this 10th day of April, 2020.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[3] Because the Court concludes it does not have personal jurisdiction over the Defendant, it does not reach Defendant's request that this matter be transferred.